UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALDEN PARK, LLC and
NORTHERN GROUP, INC.,

    Plaintiffs,                                              Case No. 08-12116

v.                                                             Hon. Lawrence P. Zatkoff

ANGLO IRISH BANK CORPORATION,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on February 26, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the Motion for Appointment of Receiver filed by Defendant/Counter-Plaintiff ("Defendant"). The parties have fully briefed the Motion.[1] The Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the Motion for Appointment of Receiver is GRANTED.

---

[1] Upon completion of the standard briefing of the Motion, the parties asked the Court to hold off deciding the Motion while they attempted to resolve the issue. Subsequently, the parties informed the Court that their resolution attempts were unsuccessful. Each of the parties has since filed a supplemental brief regarding the Motion.

## II.  BACKGROUND

In 2007, Defendant agreed to loan Plaintiff/Counter-Defendant Alden Park, LLC ("Alden") up to $15 million to refinance a prior loan and complete capital improvements to an historic Detroit riverfront apartment complex known as Alden Park Towers (the "Property").  In conjunction with that loan, Defendant and Alden executed a Loan Agreement and a number of related documents, including a promissory note and a mortgage, giving Defendant a secured interest in the Property as collateral.  Plaintiff/Counter-Defendant Northern Group, Inc. ("NGI"), Alden's managing member, guaranteed the loan.  In March 2008, Alden/NGI (hereinafter, "Plaintiffs") submitted a written request for a Capital Improvement Advance to Defendant.  Defendant refused to make the Capital Improvement Advance because it believed Alden was in default under the Loan Agreement.

Upon Defendant's refusal to make the requested Capital Improvement Advance, Plaintiffs filed a Complaint against Defendant in Wayne County Circuit Court on April 14, 2008.  Therein, Plaintiffs asserted three causes of action against Defendant: (1) breach of contract for refusing to make the Capital Improvement Advance, (2) specific performance, and (3) declaratory relief.  Defendant removed the action to this Court on the basis of diversity and filed a Counter-Complaint against Plaintiffs.  Defendant asserted counter-claims against Alden for (a) breach of contract, (b) declaratory relief, and (c) accounting, and a counter-claim against NGI for declaratory relief.  Defendant has since filed the instant Motion for Appointment of Receiver so that a receiver can:

1. Take control of the Property;

2. Oversee the completion of the capital improvements to the Property undertaken by Alden; and

3. Preserve and protect the Property and its tenants by overseeing the management of the Property (including leasing, maintenance and payment of expenses, taxes,

insurance and utilities).

### III. LEGAL STANDARD

As a general rule, the appointment and discharge of a receiver are matters of discretion for the Court. *See, e.g., Jones v. Village of Proctorville, Ohio*, 290 F.2d 49, 50 (6th Cir. 1961). The appointment of a receiver is appropriate to:

> preserve property which is the subject of litigation during the pendency of the litigation until a final disposal of all questions, legal or equitable, and considering that receiverships invariably involve property interests, the necessity for conservation, preservation, protection, and administration of property, pending an action, justifies the appointment of a receiver.

65 AM.JUR.2d *RECEIVERS* § 27. The "appointment of a receiver is considered to be an extraordinary remedy that should be employed only in cases of clear necessity to protect plaintiff's interests in the property." WRIGHT & MILLER, FED. PRACT. AND PROC. § 2983, at 24 (2003).

### IV. ANALYSIS

The parties dedicate much of their briefs to arguing that the other party(ies) breached the Loan Agreement first. The Court finds that while such arguments address the substantive nature of the Complaint and Counter-complaint in this action, such arguments do not aid the Court in determining whether a receiver should be appointed in this matter. Several undisputed facts, however, persuade the Court that the appointment of a receiver is (a) provided for under the Loan Agreement and related documents, and (b) necessary to protect the Property and Defendant's interests therein.

**A.     Loan Documents**

As discussed below, Alden expressly consented to the appointment of a receiver upon the occurrence of certain events, at least one of which undisputedly has occurred. The Loan Agreement and related documents also provide that Defendant is entitled to seek the appointment of a receiver if one or more other events occur, many of which Plaintiffs acknowledge have occurred.

First, Plaintiffs allowed the Property to become encumbered by failing to pay their 2007 and 2008 real estate taxes (including, without limitation, payments due in August 2007 and January 2008). At the time the Motion for Appointment of Receiver was filed, the arrearage totaled almost $250,000. As of January 9, 2009, the arrearage remained approximately $200,000, and public records identify the account for the Property as "delinquent." Plaintiffs claim that Alden is waiting for a tax credit from the City of Detroit, but Plaintiffs do not submit any evidence of what the tax credit is for, the amount of the alleged credit or how such tax credit bears on the real estate taxes currently due and owing. The failure to pay real estate taxes when due violates Section 9.3 of the Loan Agreement.

Second, in each of the three briefs submitted by Defendant, Defendant asserted that the Property is not currently insured by Plaintiffs and/or that Plaintiffs have not produced evidence the Property is insured. Plaintiffs did not respond to that assertion in either of the two briefs they filed, including the supplemental brief filed January 30, 2009. The failure to provide evidence of and/or maintain insurance for the Property violates Sections 7.1.15 and 9.5 of the Loan Agreement.

Third, the Property is encumbered by a number of construction liens. One lien holder seeking satisfaction of a $125,000 lien has filed a foreclosure action in Wayne County Circuit Court. Plaintiffs suggest that such liens "are not a concern" and that Plaintiffs will vigorously contest the

liens. Plaintiffs' suggestions, however, do not overcome the fact that the liens: (1) were filed, (2) have been in place for many months, and (3) violate Section 9.6.1 of the Loan Agreement.

Fourth, Plaintiffs did not allow Defendant to inspect the Property in April and May 2008 upon Defendant's request, in violation of Section 9.13 of the Loan Agreement. Fifth, Plaintiffs did not provide Defendant with financial statements and other requested documents in May 2008 and beyond. Plaintiffs were (and are) obligated to provide such documents pursuant to Section 9.2 of the Loan Agreement (and subsections thereof).

Finally, Plaintiffs have unilaterally replaced the manager of the Property on two occasions in the past six months. On the first occasion, Alden and Defendant apparently discussed replacing Meridian Property Management Group (the Property manager the parties agreed to hire at the time the Loan Agreement was executed) with KMG Prestige. Although Defendant agreed that KMG Prestige was an acceptable replacement, Defendant alleges that Alden did not obtain approval to transfer management control (or at least approval of the terms of such management control), as required by Section 9.12 of the Loan Agreement. More significantly, without seeking Defendant's consent or approval, Alden then unilaterally replaced KMG Prestige with another management company, PMR Companies. In fact, Plaintiffs admittedly did not notify Defendant of their intention to terminate KMG Prestige or hire PMR Companies before taking such actions.

Plaintiffs' rationale for the failure to notify Defendant of, or obtain Defendant's approval for, the termination of KMG Prestige and the hiring of PMR Companies was that Alden did not want to have to wait for Defendant to go through its approval process:

> Alden agrees that it recently replaced the property manager, and due to the urgency required, did not go through [Defendant's] lengthy review, approval and consent process. Alden's actions were for the benefit of the Property and, ultimately, for [Defendant]. ... Thus,

> [Defendant] has no basis to complain of Alden's action of terminating KMG [Prestige].

The Loan Agreement, however, does not afford Alden discretion to unilaterally make such a decision. Thus, the transfer of management control without approval of Defendant violates Section 9.12 of the Loan Agreement.

Each of the foregoing six identified violations of the Loan Agreement also constitutes an "Event of Default" under the Loan Agreement. *See* Loan Agreement §§ 11, 11.1, 11.1.1 and 11.1.5. Each Event of Default identified above,[2] in itself, permits Defendant to seek a variety of remedies, including the appointment of a receiver for the Property. *See* Loan Agreement §§ 10.1.3 (allowing Defendant "to obtain injunctive relief or to pursue equitable remedies under any of the Loan Documents"), 11.3.3 (allowing Defendant to "pursue any and all remedies provided for ... under any ... of the other Loan Documents"), and 15.7.4(i) (providing that "actions ... for the appointment of a receiver shall be governed by the laws of the State of Michigan"); Promissory Note § 15.4 (providing that "actions ... for the appointment of a receiver, shall be governed by the laws of the State of Michigan"). In addition, the Mortgage executed in connection with the Loan Agreement expressly provides that Alden consents to the appointment of a receiver in the event taxes are not paid (and/or insurance is not maintained on the Property). *See* Mortgage § 7, which states:

> [Alden's] failure to pay any insurance premium upon policies covering any of the [Property] or failure to pay any taxes ... assessed against the [Property] ... shall constitute waste as provided in M.C.L. 600.2927 as amended; and [Alden] agrees to and hereby does consent to the appointment of a receiver under said statute, with such powers

---

[2] Defendant also claims Plaintiff defaulted by failing to: (a) maintain a $5.4 equity contribution; (b) make payments due under the Loan Agreement; (c) make a timely interest payment on April 10, 2008; and (d) keep the Property in "good repair." The Court does not address the substance of any of these disputed claims in deciding this Motion.

6

> as the court making such appointment shall confer, should [Defendant] elect to resort to its remedies thereunder.

**B.     Demonstrated Harm**

The Court concludes that, taken together, Plaintiffs' actions (or inactions, as the case may be) resulting in the foregoing Events of Default clearly demonstrate harm to Defendant's interest in the Property, as well as the Property itself. The Court's conclusion is supported by the facts and conclusions of the Michigan Court of Appeals in *Francis Martin, Inc. v. Lomas*, 62 Mich.App. 706 (1975). Although *Lomas* is relied on by Plaintiffs for the proposition that courts should be "slow to order receiverships," *id.* at 710, the *Lomas* court upheld the trial court's appointment of a receiver for the following reasons:

> [W]e note that appellant's past performance in this matter was unimpressive. It had defaulted on a promissory note given to the Bank some six months before suit was commenced. No payments on this note were ever made. Various mechanic liens were permitted to be attached to the building. Appellant also admits that it failed to pay any real estate taxes for the property and also failed to procure any insurance for the apartment. It conceded that it was receiving rent from tenants of the apartment but was not applying the rent towards the note, insurance or taxes.

*Id.* at 710-11. *See also Band v. Livonia Assocs.*, 176 Mich.App. 95, 105-06 (1989) (affirming appointment of a receiver where taxes were unpaid and land contract was in default).

The Court also notes that M.C.L.A. § 600.2927(2) specifies that a lender may move for the appointment of a receiver to prevent further waste (harm) and to "collect the rents and income from such property and ... exercise such control over such property" as the court deems appropriate. The failure to pay property taxes (as Alden admittedly did here) and/or the failure to maintain insurance (which Alden has not disputed it has done here) constitutes waste (harm) when the mortgage or loan documents so provide, as Section 7 of the Mortgage does in this case. M.C.L.A. § 600.2927(1). *See also Nusbaum v. Shapero*, 249 Mich. 252 (1930); *Smith v. Mutual Benefit Life Ins. Co.*, 362 Mich.

114 (1960). The initiation of the foreclosure action against the Property to recover amounts owed by Alden to a lien holder, as discussed above, also evidences a strong showing of harm. *See, e.g., Lomas*, 62 Mich.App. at 710.

The Court further finds that Plaintiffs' actions (or inaction) since Defendant filed its Motion for Appointment of Receiver demonstrate harm necessitating the appointment of a receiver. Not only have Plaintiffs failed to (a) remedy the foregoing Events of Default or (b) quell the concerns upon which the Motion was filed, Plaintiffs have instead engaged in behavior which gives greater reason to find the Property and Defendant's interest in the Property are in danger. Specifically, the fact that Plaintiffs unilaterally removed and replaced the management company (namely with respect to the replacement of KMG Prestige by PMR Companies) demonstrates that they have not been acting in compliance with terms of the Loan Agreement or with concern for the interests of Defendant in the Property.

## C.    **Plaintiffs' Contentions**

Plaintiffs assert that a receiver is not warranted because (1) any actions they have taken are necessary, and (2) any defaults under the Loan Agreement are due solely to the fact that Defendant failed to fund the Capital Improvement Advance in March 2008 (*i.e.*, Defendant's failure to fund constituted the first *material* breach of the Loan Agreement). The Court finds that Plaintiffs' contentions are not borne out by the facts in some instances. For example, none of the following Events of Default can be attributed to a lack of funding from Defendant in March 2008: (a) Plaintiffs' failure to pay real estate taxes prior to submitting the March 2008 request for a Capital Improvement Advance; (b) Plaintiffs' unilateral change of management control; (c) Plaintiffs' refusal to allow an inspection of financial records; (d) Plaintiffs' refusal to allow an inspection of

the Property itself; and (e) Plaintiffs' failure/refusal to produce evidence of insurance on the Property.[3]  The Court also finds that Plaintiffs' request to be free of a receiver is inconsistent with the bargained-for-agreements they entered into with Defendant.

In essence, Plaintiffs want the best of both worlds.  Plaintiffs want the money provided for under the Loan Agreement, but they do not want to have to adhere to the terms and conditions set forth in the Loan Agreement and related documents.  Plaintiffs also do not want to be held accountable for failing to adhere to the terms and conditions of the Loan Agreement and related documents, even though Plaintiffs bargained for those agreements and agreed to the terms therein.  According to Plaintiffs, their conduct is justified and excused as necessary because Plaintiffs alone are in the best position to make decisions in the best interests of the Property.  The problem with Plaintiffs' position is that they agreed to meet certain conditions before Defendant would be obligated to advance monies to Alden.  In March 2008, when Defendant refused to advance monies upon Plaintiffs' request, it appears Defendant had a right to do so under the Loan Agreement and related documents.  Therefore, the fact that Plaintiffs apparently suffered cash flow and financial difficulties resulting in additional events of default has no bearing on the Court's analysis.

Plaintiffs also assert that a court should appoint a receiver only in those cases where the corpus of the litigation "is in imminent danger of loss or irreparable injury," *Schram v. Pasco*, 302 Mich. 455, 461 (1942), and that this is not such a case.  In their Complaint, however, Plaintiffs noted the issues facing the Property: "[T]hose capital improvements [sought in the March 14, 2008 request

---

[3] It is also possible that the construction liens (and the absence of insurance, if in fact there is no insurance on the Property) are not attributable to Defendant's refusal to fund the March 2008 request for a Capital Improvement Advance.  The Court does not, however, find it necessary to make that determination in deciding this Motion.

for Capital Improvement Advance] include renovations to the Property which, if not completed, will adversely effect [sic] the health and safety of the tenants located in the Property." Therefore, the Court finds that Plaintiffs' own words further support the need for the appointment of a receiver for the Property. In addition, the delinquent real estate taxes which have resulted in the account for the Property being sent to Wayne County for collection, together with the construction liens and foreclosure action filed against the Property, demonstrate to the Court that there is a danger of loss or irreparable harm to the Property and Defendant's interest therein. Defendant and Court need not wait until the Property has been awarded to another party before requesting and appointing a receiver, respectively.

**D.     Conclusion**

For the reasons set forth above, the Court concludes that (1) based on the Loan Agreement and related documents, Defendant has a right to seek the appointment of a receiver (and that, at least as far as the failure to pay real estate taxes and/or maintain insurance, Alden has consented to the appointment of a receiver), (2) Plaintiffs' actions (and/or inactions) have harmed the Property and Defendant's interest in the Property, (3) Plaintiffs' continued operation of the Property constitutes a significant and ongoing threat to the Property and Defendant's interest in the Property, and (4) Defendant has met its burden of establishing that it is necessary to appoint a receiver in order to protect the Property and Defendant's interests in the Property.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, the Motion for Appointment of Receiver filed by Defendant is GRANTED. The Court hereby ORDERS the parties to agree on a receiver and

submit the name of such receiver to the Court on or before March 6, 2009; provided, that in the event the parties cannot agree on a receiver, Plaintiffs (collectively) and Defendant each shall submit the name of one proposed receiver to the Court on March 6, 2009.

    IT IS SO ORDERED.

                                              S/Lawrence P. Zatkoff
                                              LAWRENCE P. ZATKOFF
                                              UNITED STATES DISTRICT JUDGE

Dated: February 26, 2009

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 26, 2009.

                                              S/Marie E. Verlinde
                                              Case Manager
                                              (810) 984-3290