UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALDEN PARK, LLC, a Delaware limited liability company, and NORTHERN GROUP, INC., a Delaware corporation,
Plaintiffs/Counter-Defendants,

v.

ANGLO IRISH BANK CORPORATION LIMITED, a corporation organized under the laws of the Republic of Ireland,
Defendant/Counter-Plaintiff.

Case No. 2:08-cv-12116
Hon. Lawrence P. Zatkoff
Magistrate Judge Michael J. Hluchaniuk

_____/

## ORDER APPOINTING RECEIVER

This matter having come before the Court and this Court being fully advised in the premises:

IT IS ORDERED that APT Receiver, LLC, whose address is 30215 Southfield Road, Suite 200, Southfield, MI 48076-1361 (hereinafter "Receiver"), is hereby named and appointed Receiver, with full powers as receiver of the real property commonly known as Alden Park Towers and located at 8100 East Jefferson Avenue, Detroit, Michigan, as described in Exhibit A attached hereto (the "Real Property"), together with all buildings, improvements, tenements, appurtenances, rents, revenues, profits, fixtures, machinery, equipment and goods of every nature whatsoever located in or on the Real Property, and used or intended to be used in connection with the Real Property (collectively, the "Property") immediately upon the entry of this Order and continuing

during the pendency of this action or until further order of this Court, subject to the following terms and conditions:

1. The Receiver is hereby granted all powers and authority conferred by statutes and case law, including but not limited to MCL 600.5201 et seq., to preserve and protect the Property and is empowered and directed to take possession of the Property, to preserve, protect and prevent waste of the Property, and to act as the managing agent of the Property with full authority to supervise and oversee the operation thereof, and to employ a management company in aid thereof (which will be an affiliate of the Receiver), as the Receiver shall deem necessary in its reasonable judgment, subject to the provisions of this Order.

2. The Receiver is empowered and directed to collect all rents, revenues, royalties, fees, charges, profits and other income derived from the Property. As soon as practicable after entry of this Order, Plaintiffs/Counter-Defendants Alden Park, LLC and Northern Group, Inc. (collectively "Owners") shall notify the tenants of the appointment of the Receiver and direct the tenants to remit rental payments to the Receiver or to the management company designated by the Receiver. The Receiver may also notify the tenants of the appointment in the event that Owners fail to timely do so. The Receiver shall not have authority to compromise claims for arrearages by any tenants without the approval of Defendant/Counter-Plaintiff Anglo Irish Bank Corporation Limited (the "Bank"), Owners and the Court.

3. The Owners, their affiliates, agents, servants and attorneys, and each and every one of them be and hereby are enjoined and restrained from collecting rents, revenues, royalties, fees, charges, profits and other income derived from the Property or from interfering in any manner with the possession of the Receiver or the operations of the Property.

4. From the current or delinquent revenues generated by the Property and collected by the Receiver pursuant to this Order, the Receiver is empowered and directed

to pay, in the following order of priority, and in a commercially reasonable manner: (a) all costs and fees associated with remediation of environmental contamination upon the Property, if any; (b) the costs and expenses of reasonable and necessary repairs as determined by the Receiver for maintenance, utilities, insurance premiums and other similar current operating expenses of the Property and unit renovations in connection with new leases of the Property; (c) real and personal property taxes pertaining to the Property; (d) the reasonable fees and disbursements of the Receiver, as approved by this Court in accordance with paragraph 10 below; (e) monthly mortgage payments to Defendant/Counter-Plaintiff; and (f) to retain the balance, if any, subject to further Order of the Court.   Except in the case of an emergency repair, the Receiver shall not undertake or commit for any repairs or unit renovations with a cost in excess of $10,000.00, without first having obtained approval of the Court.

5. The Receiver is empowered and directed to endeavor to lease and re-lease units, for terms not exceeding two years, at appropriate rates and terms for properties in similar locations with a similar tenant mix, and to enforce leases and other agreements with respect to the Property and, after having first obtained approval of the Court, compromise disputes regarding same as may be reasonably necessary to carry out the provisions of this Order.

6. The Receiver is empowered to honor existing contracts or enter into additional contracts for goods and services required for the operation of the Property to the extent that the Receiver deems appropriate.  Except as to the cost of environmental remediation and payment of City of Detroit taxes in arrears, or as otherwise specifically permitted by this Court or this Order, the Receiver is not authorized to pay debts incurred without its authorization or incurred prior to its appointment, unless and to the extent that the Receiver in its discretion determines that non-payment of such debts would be detrimental to its operation of the Property.

7. The Receiver shall execute and prepare all documents, either in the name of the property manager or in the Receiver's own name, for or on behalf of the Court and/or Owner as the case may be, which are necessary or incidental to preserving, protecting, managing/or controlling the Property.

8. The Receiver is authorized in its discretion to employ any of the current employees at the Property, and such other employees as the Receiver shall deem necessary in his reasonable judgment.

9. The Receiver is directed to obtain and file with this Court a bond in an amount not less than $5,000.00 issued by a corporate surety in the usual form of such bonds.

10. The fee of the Receiver shall be invoiced monthly and submitted to the Court with the monthly accounts referenced in paragraph 11 below. The fees so invoiced shall be paid after petition and notice of hearing for same. The Receiver shall be entitled to the following:

   a. A Property Management fee equal to 4.5% of the monthly gross revenues of the Property;

   b. A fee equal to 4.0% of the cost of capital improvements made to the Property;

   c. A monthly fee equal to $2,000.00 per month to cover the cost of the Receiver's reporting requirements set forth herein; and

   d. A fee in the amount of $200.00 per hour as compensation for each hour of time of the Receiver spends attending all court and/or litigation proceedings.

11. The Receiver is directed to file with the Court and furnish to the parties, within thirty (30) days after the Receiver begins performance of its duties hereunder, and monthly thereafter until further Order of this Court, a report in form and content similar to

reports normally provided by the Receiver to its property management clients, to include the following information:

    (a)    The Property's gross income for the applicable month;

    (b)    The Property's operating expenses for the applicable month;

    (c)    The Property's capital expenses for the applicable month;

    (d)    The net amount (if any) remaining after all expenses have been paid;

    (e)    A current rent roll;

    (f)    A copy of each lease signed during the applicable month;

    (g)    An arrears report and security report; and

    (h)    Such other information as the Court, in its reasonable discretion, or the parties may request.

12.    Anything to the contrary herein notwithstanding, the Receiver shall not, without the approval of the Court or except as otherwise provided or permitted herein, make any commitments relating to the Property that would entail cash outlays or create liabilities in excess of the amount of cash on hand or reasonably expected to be available from operations of the Property.

13.    The Receiver is granted the power to take immediate possession of and to copy: all books, records, notes, memoranda, loan documents, deeds, bills of sale, leases, rent rolls, canceled checks, checks, check ledgers, calendar notes, diary notes, notes, records, books, ledgers, electronically stored data, tape recordings, and computer discs, or any other financial documents or financial information in whatever form related to the Property and belonging to Owners, or either of them, or any agent thereof.

14.    Owners, their agents and employees, and all persons or entities who receive notice of this Order by personal service or otherwise, are restrained and enjoined from interfering with the Receiver and from directly or indirectly destroying,

mutilating, erasing, altering, concealing, or disposing of, in any manner, directly or indirectly, any documents that relate to the Property.

  15. Except by leave of this Court, during the pendency of the receivership, all other persons, creditors and entities be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of the Property, the Receiver, receivership assets, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

  a. Commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

  b. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of the Property or attempting to foreclose, forfeit, alter or terminate any of the Bank's interest in property, whether such acts are part of a judicial proceeding or otherwise;

  c. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Property; and

  d. Doing any act or thing to interfere with the Receiver taking control, possession or management of the Property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver; or to interfere with the exclusive jurisdiction of this Court over the Property.

This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

16. The Receiver shall deposit into a fiduciary checking account any and all monies, cash, funds, sale proceeds from the sale of assets and/or property and shall apply those funds consistent with the orders of this Court.

17. The Receiver shall advise the Bank in writing of any operating shortfalls. The Bank shall be responsible for such costs except as otherwise provided herein. Any funds advanced by the Bank for operating shortfalls shall be secured by the lien of the Bank's mortgage and allowed as priority costs and expenses of protecting the Property in any final judgment awarded to the Bank. Moreover, the Bank reserves any and all rights under the Loan Agreement, Mortgage, or otherwise, to seek reimbursement of such costs from Owners, their members, successors, and/or assigns.

18. The Bank shall be responsible for the payment of the fees and costs of the Receiver except as otherwise provided herein, provided, however, the Bank reserves any and all rights under the Loan Agreement, Mortgage, or otherwise, to seek reimbursement of all fees and costs of the Receiver from Owners, their members, successors, and/or assigns.

19. The Receiver and all personnel hired by the Receiver, including Jackier Gould, counsel to the Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for reimbursement of out-of-pocket expenses. The fee structure of Jackier Gould attached hereto as Exhibit B is reasonable and acceptable to the parties. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation.

20. The Receiver, while lawfully acting as such, is deemed an agent of the Court and is entitled to and shall have immunity to the fullest extent of the law, and the parties shall otherwise fully indemnify and hold the Receiver, including, but not limited

to its agents, officers, employees, attorneys and/or consultants, safe and harmless from and against any and all causes of action, suit, proceedings, claims, demands, suits, losses, damages and liability, including costs and a reasonable receiver and attorney's fee ("Claims"), in any manner arising from, in connection with or relating to any of the Assets and/or in the course the Receiver acting in such court-appointed capacity.

21. The Receiver shall be authorized to record a Claim of Interest against the Property and the recordation of the Receiver's Claim of Interest shall constitute notice of the Receiver's lien for unpaid Receiver's fees and costs. The Register of Deeds shall accept a certified copy of this Order for recording, against the Property.

22. The ongoing litigation and the balance of any Judgment or Orders of this Court previously entered shall remain in full force and effect and this Court retains jurisdiction of this matter for all purposes. Nothing contained in this Order Appointing Receiver shall be construed to impair in any way any rights which the parties may have to pursue any claims that they may have against each other or other parties, including, without limitation, any and all claims relating to the rentals, security deposits or other income, revenue or proceeds derived from the Property, or actions for breach of guaranty.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: April 2, 2009

EXHIBIT "A"

LEGAL
DESCRIPTION

All that part of Private Claim 679 described as; Beginning at a stake standing on the Southerly tine of Jefferson Avenue, East in a Private Claim 679, distant on a course South 49 degrees West along said Southerly line of Jefferson Avenue East, 153.96 feet from the intersection of the Southerly line of Jefferson Avenue East, and the line between Private Claim 679 and 180 (said Private Claim 180 also being known as the "Cook Farm") said point of beginning being the comer of a tract sold to S. D. Elwood; thence South 49 degrees West along the Southerly line of Jefferson Avenue East, 153.96 feet to a point; thence South 28 degrees East, 897.18 feet more or less to the Channel Bank of Detroit River; thence North 52 degrees 36 minutes East along the Channel Bank of said River 152.05 feet to a point; said point of being distant 150 feet Easterly of and right angles to the Westerly line of the land herein described; thence North 28 degrees West, 906.98 feet more or less to the place of beginning.

Together with the buildings situated thereon and all and singular the hereditaments, appurtenances, riparian and shore rights and privileges thereunto belonging or in anywise appertaining. The above described premises being all of the property known as "Alden Park Manor" (formerly known as the Bewick Homestead) and known as No. 8100 Jefferson Avenue East, (formerly known as 8110 Jefferson Avenue East) and being the West, 153.96 feet of the East, 307.92 feet of Private Claim 679 measured along the Southerly line of Jefferson Avenue East, lying South of and adjoining said Jefferson Avenue, East and being 150 feet in width more or less at right angles to the Easterly line of Private Claim 679 and extending from the Southerly line of said Jefferson Avenue, East to the Channel Bank of Detroit River,

ALSO, all of Lot 7 and the Easterly 8.37 feet of the Northerly 762.05 feet of Lot 6 and the Easterly 7.92 feet of the remaining Southerly part of Lot 6 both as measured at right angles to the East line of Lot 6 of Commissioners Subdivision of Van Dyke Estate in Private Claim 100 and 679, City of Detroit, Wayne County, Michigan, according to the recorded plat thereof, as recorded in Liber 4, Page 98 of Plats, Wayne County Records. Said parcel having a frontage of 108.60 feet as measured along the South line of Jefferson Avenue.

SURVEYED AS:

Lot 7, and the East 8.37 feet of the North 762 feet of Lot 6 of COMMISSIONER'S SUBDIVISION OF THE VAN DYKE ESTATES IN PRIVATE CLAIMS 100 and 679, as recorded in Liber 4 of Plats, Page 98, Wayne County Records. Together with the West 153.96 feet of the East 307.92 feet of Private Claim 679, City of Detroit, Wayne County, Michigan, being more particularly described as follows: Commencing at the intersection of the Easterly line of Private Claim 679 and the Southerly line of Jefferson Avenue, said point also being the Northeast comer of INDIAN VILLAGE MANOR CONDOMINIUM, as recorded in Liber 29768, Page 5005, Wayne County Records; thence South 48 degrees 54 minutes 53 seconds West, 153.96 feet along the Southerly line of Jefferson Avenue and the North line of said INDIAN VILLAGE MANOR CONDOMINIUM to the Northwest corner of said INDIAN

VILLAGE MANOR CONDOMINIUM and the Point of Beginning of the following described Parcel; thence continuing South 48 degrees 54 minutes 53 seconds West, 153.96 feet along the Southerly line of Jefferson Avenue to the Northeast corner of Lot 7 of said COMMISSIONER'S SUBDIVISION OF THE VAN DYKE ESTATES IN PRIVATE CLAIMS 100 and 679; thence continuing South 48 degrees 54 minutes 53 seconds West. 108.59 feet along the Southerly line of Jefferson Avenue and the Northerly line of said COMMISSIONER'S SUBDIVISION OF THE VAN DYKE ESTATES IN PRIVATE CLAIMS 100 and 679; thence South 28 degrees 10 minutes 48 seconds East, 762.39 feet along the West line of the East 8.37 feet of Lot 6 of said COMMISSIONER'S SUBDIVISION OF THE VAN DYKE ESTATES IN PRIVATE CLAIMS

100 and 679; thence North 61 degrees 22 minutes 57 seconds East, 105.85 feet along the Northerly edge of the Detroit River to the East line of Lot 7 of said COMMISSIONER'S SUBDIVISION OF THE VAN DYKE ESTATES IN PRIVATE CLAIMS 100 and 679; thence South 28 degrees 10 minutes 48 seconds East, 111.35 feet along the East line of Lot 7 of said COMMISSIONER'S SUBDIVISION OF THE VAN DYKE ESTATES IN PRIVATE CLAIMS 100 and 679, the West line of the East 307.92 feet of Private Claim 679 and the Northerly edge of the Detroit River; thence North 52 degrees 30 minutes 58 seconds East, 152.07 feet along the Northerly edge of the Detroit River; thence North 28 degrees 10 minutes 48 seconds West, 906.98 feet along the East line of Private Claim 679 and the West line of said INDIAN VILLAGE MANOR CONDOMINIUM to the Point of Beginning.

Exhibit B

Attorney's Fee Schedule

| ATTORNEY/PARALEGAL | RATE |
|---|---|
| Lawrence S. Jackier | $350 |
| Dean J. Gould | $350 |
| Nathan Upfal | $350 |
| Michael J. Eizelman | $350 |
| Eric A. Bean | $350 |
| Nancy S. Heinrich | $240 |
| George W. Day | $240 |
| Thomas R. August | $250 |
| Scott Mirkes | $195 |
| Jonathan B. Frank | $325 |
| Terry L. Ross | $90 |
| Robert A. Jacobs | $345 |

Certain matters may be charged at a higher hourly rate due to the nature of the services provided, with prior notice to you.