UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALDEN PARK, LLC and
NORTHERN GROUP, INC.,

     Plaintiffs/Counter-Defendants,                    Case No. 08-12116

v.                                                              Hon. Lawrence P. Zatkoff

ANGLO IRISH BANK CORPORATION
LIMITED,

     Defendant/Counter-Plaintiff.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on September 23, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant/Counter-Plaintiff ("Defendant"), wherein Defendant asks the Court to dismiss Plaintiffs/Counter-Defendants' cause of action with prejudice and grant summary judgment against Plaintiffs/Counter-Defendants on Defendant's counter-claims (Docket #44). The parties have fully briefed the Motion. The Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

In 2007, Defendant agreed to loan Plaintiff/Counter-Defendant Alden Park, LLC ("Alden") up to $15 million to refinance a prior loan and complete capital improvements to a historic Detroit riverfront apartment complex known as Alden Park Towers (the "Property"). On June 6, 2007, Defendant and Alden executed a Loan Agreement and a number of related documents, including a promissory note and a mortgage, giving Defendant a secured interest in the Property as collateral. Plaintiff/Counter-Defendant Northern Group, Inc. ("NGI"), Alden's managing member, guaranteed the loan. On March 14, 2008, Alden/NGI (hereinafter, "Plaintiffs") submitted to Defendant a written request for a Capital Improvement Advance. Defendant refused to make the Capital Improvement Advance because it believed Alden was in default under the Loan Agreement. Specifically, Defendant notified Plaintiffs on April 4, 2008, that Defendant was refusing the Capital Improvement Advance because the loan was "out of balance" and that "an Equity Deficiency exist[ed] as a result of overruns on several of the line items within the Project Budget."

Upon Defendant's refusal to make the requested Capital Improvement Advance, Plaintiffs filed a Complaint against Defendant in Wayne County Circuit Court on April 14, 2008. Therein, Plaintiffs asserted three causes of action against Defendant: (1) breach of contract for refusing to make the Capital Improvement Advance, (2) specific performance, and (3) declaratory relief. Defendant removed the action to this Court on the basis of diversity and filed a Counter-Complaint against Plaintiffs. Defendant asserted counter-claims against Alden for (a) breach of contract, (b) declaratory relief, and (c) an accounting, as well as a counter-claim against NGI for declaratory relief. Defendant subsequently filed a Motion for Appointment of Receiver, which Motion was granted in an Opinion and Order issued by the Court on February 26, 2009 (the "Opinion").

## III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56©.  A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. ANALYSIS

In this case, the Loan Agreement provides that New York law applies to any dispute involving the Loan Agreement. Under New York law, when "the interpretation of a contract is at issue, summary judgment is proper where the language of the contract is unambiguous, lending itself to only one reasonable interpretation." *Hanson v. McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667-69 (2d Cir. 1996) (citation omitted). "Summary judgment may be granted when the provisions of a contract convey a definite and precise meaning, absent any ambiguity." *Williams & Sons Erectors v. South Carolina Steel*, 983 F.2d 1176, 1183 (2d Cir. 1993) (citations omitted). The question whether a contract is clear or ambiguous is to be decided by the court as a matter of law. *See Mellon Bank, N.A. v. United Bank Corp. Of N.Y.*, 31 F.3d 113, 115 (2d Cir. 1994); *Sayers v. Rochester Tel. Corp.*, 7 F.3d 1091, 1094 (2d Cir. 1993). None of the parties has contended that any of the relevant provisions of the Loan Agreement are ambiguous or are subject to more than one reasonable interpretation, and the Court concludes that the relevant provisions of the Loan Agreement are clear and unambiguous.

As discussed in the Opinion, there is no dispute that Plaintiffs failed to fulfill a number of covenants and/or requirements set forth in the Loan Agreement (and many of those failures have continued). For example, it is undisputed that: (a) Alden did not timely pay property taxes, in violation of Section 9.3; (b) the Property is encumbered by a number of construction liens, in violation of Section 9.6.1; (c) Alden did not make timely interest payments on the loan, in violation of Section 2.3; and (d) Alden did not provide required documentation to Defendant, in violation of Section 9.2. Plaintiffs contend, however, that these failures are the result of, and are excused by, Defendant's unreasonable and unjustified failure to make the Capital Improvement Advance

Plaintiffs requested on March 14, 2008. In the Opinion, the Court addressed Plaintiffs' argument that any of their breaches were excused by the initial breach of Defendant when Defendant failed to make the Capital Improvement Advance in March 2008. The Court concluded:

> The problem with Plaintiffs' position is that they agreed to meet certain conditions before Defendant would be obligated to advance monies to Alden. In March 2008, when Defendant refused to advance monies upon Plaintiffs' request, it appears Defendant had a right to do so under the Loan Agreement and related documents.

Thus, as stated by Plaintiffs, "[a]ll other issues in this case are ancillary to the issue of whether [Defendant] wrongfully denied Alden's March 2008 request. ... If [Defendant] wrongfully denied the March 2008 Capital Improvements Advance Request, [Defendant], not Alden is in breach of contract . . ."

Plaintiffs argue that summary judgment is not warranted because Defendant's "decision to deny Alden's request for a Capital Improvement Advance in and of itself creates an issue of fact" regarding which party committed the initial breach of contract. The Court, however, concludes that there is no genuine issue of material fact that (a) Plaintiffs were in breach of the Loan Agreement prior to and at the time they requested the Capital Improvement Advance on March 14, 2008, and (b) Defendant had the right to refuse that Capital Improvement Advance request pursuant to Sections 7.2.2 and 7.2.6 of the Loan Agreement.

### A.    Plaintiffs in Breach of the Loan Agreement

*1.    Real Estate Taxes*

As stated in the Opinion,

> Plaintiffs allowed the Property to become encumbered by failing to pay their 2007 and 2008 real estate taxes (including, without limitation, payments due in August 2007 and January 2008). At the time the Motion for Appointment of Receiver was filed, the arrearage

> totaled almost $250,000. As of January 9, 2009, the arrearage remained approximately $200,000, and public records identify the account for the Property as "delinquent." Plaintiffs claim that Alden is waiting for a tax credit from the City of Detroit, but Plaintiffs do not submit any evidence of what the tax credit is for, the amount of the alleged credit or how such tax credit bears on the real estate taxes currently due and owing. The failure to pay real estate taxes when due violates Section 9.3 of the Loan Agreement.

Plaintiffs now argue that Section 10.1.1 of the Loan Agreement "allows Alden to withhold tax payments where it is disputing the amount of tax owed [and as] Alden is disputing the amount of taxes owed . . . [Alden] is not in default." The Court's review of Section 10.1.1 of the Loan Agreement reveals that there are mechanisms by which Plaintiffs *could* withhold real estate tax payments if several conditions are satisfied (*e.g.*, maintaining unencumbered cash revenues related to such taxes and documenting Alden's financial capacity to pay for a tax dispute).

In the instant case, however, Plaintiffs have presented the Court with nothing beyond an unsupported statement that "Alden is disputing the amount of taxes owed . . ." Plaintiffs have not provided the Court with any documents that show Alden (and/or NGI) has filed any real estate tax appeal(s) with the City of Detroit. Plaintiffs also have not provided the Court with any documentation that (a) Alden has unencumbered cash reserves with respect to the assessments made and due, or (b) Alden (and/or NGI) has the financial capacity to undertake and pay for such a tax dispute, as required by Section 10.1.1. For the foregoing reasons, the Court concludes that there is no genuine issue of material fact that Plaintiffs were in default under the Loan Agreement at the time Plaintiffs submitted the Capital Improvement Advance request on March 14, 2008.

 2. *Equity Deficiency*

More significantly, the Court also concludes that there is no genuine issue of material fact that the loan was out of balance and that an Equity Deficiency existed at the time Plaintiffs

submitted the Capital Improvement Advance request on March 14, 2008 - *i.e.*, the reasons cited by Defendant in its April 4, 2008, letter for refusing the Capital Improvement Advance. Section 6.3 of the Loan Agreement provides, in relevant part, that:

> 6.3    Equity Deficiency[/]Sufficient Funds.  At all times, Lender must be reasonably satisfied that sufficient funds are available to make payment of all Project Costs incurred, or to be incurred, in connection with the Property or the Project, and for the repayment of the Loan at Maturity, from some combination of: (a) funds not yet advanced under the Loan, plus (b) funds deposited with and pledged to Lender to pay for such Project Costs, plus (c) funds reasonably projected by Borrower, to Lender's reasonable satisfaction, to be timely available from income of the Project.
>
> 6.3.2    Equity Deficiency.  An equity deficiency (hereinafter an **"Equity Deficiency"**) shall exist if, at any time prior to the repayment of the Loan and the full satisfaction of all of Borrower's Obligations, sufficient funds to satisfy the requirements of Section 6.3[] are not so available.

The March 14, 2008, Capital Improvement Advance request submitted by Plaintiffs reveals that there were cost overruns on a number of items, including the common hallways, masonry and apartment renovation.  In total, these cost overruns were in excess of $270,000 (as of January 31, 2008), a fact that Plaintiffs do not dispute.  Accordingly, the Court finds that there is no genuine issue of material fact that there were not sufficient funds available to make payment of all Project Costs incurred, or to be incurred (and to repay the Loan at Maturity), out of the "(a) funds not yet advanced under the loan." Thus, unless Plaintiffs could demonstrate that they had another source with sufficient funds to make payment of all Project Costs incurred or to be incurred (and to repay the Loan at Maturity), there is no genuine issue of material fact that there was an Equity Deficiency as of March 14, 2008, or that the loan was out of balance at the time Plaintiffs submitted the March 14, 2008, Capital Improvement Advance request.

Plaintiffs argument on this issue is limited to the following statement in its response brief:

> [Defendant] has offered no evidence that its denial of the Capital Improvement Advance was reasonable. Alden vigorously contends to the contrary, *i.e.*, that the March 2008 Capital Improvement Advance [request] was proper and should have been granted by [Defendant].

and the related Declaration of Irwin Boris, the Chief Investment Officer of NGI, wherein he states:

> 6.   Based on my professional experience and knowledge, [Defendant]'s refusal to fund the March 2008 Capital Improvement Request was not reasonable. The project was on budget and on schedule for completion. The Borrower had substantially met all of its funding requirements. Leasing/occupancy in the Property had positive traction based on current and prospective tenants observance of ongoing property improvements.

Plaintiffs fail to produce any evidence, however, to support those assertions (*e.g.*, records which show that the Project is on budget and on schedule for completion or some evidence Alden had "substantially" met all of its funding requirements). Moreover, Plaintiffs offer no evidence that, prior to submitting the March 14, 2008, Capital Improvement Request (or, for that matter, at any time after Defendant's rejection of the request), Plaintiffs pledged or deposited funds with Defendant to pay for Project Costs or that there were funds available as a result of income from the Project. Accordingly, the Court finds that there is no genuine issue of material fact that Plaintiffs did not have "sufficient funds to satisfy the requirements of Section 6.3 . . ."

Therefore, for the reasons set forth above, the Court concludes that there is no genuine issue of material fact that an Equity Deficiency existed at the time Plaintiffs submitted the March 14, 2008, Capital Improvement Advance request.

**B.   Defendant Had Right to Refuse the Capital Improvement Advance Request**

Section 7.2 of the Loan Agreement provides, in relevant part:

> 7.2 <u>Subsequent Advances</u>. <u>Each Subsequent Advance (unless otherwise noted below) shall be subject to</u> the condition precedent that all conditions to closing of the Loan and funding of the Initial Funding continue to be satisfied, and to <u>the further satisfaction of each of the following conditions precedent, unless specifically waived in writing by Lender at or prior to the time of each Subsequent Advance</u>:
>
> \*\*\*
>
> 7.2.2 <u>Sufficient Funds</u>. Lender shall not have made the determination in good faith that any Equity Deficiency exists. <u>If Lender determines that an Equity Deficiency exists,</u> the provisions of Section 6.3 shall apply, but unless and until the Equity Deficiency is eliminated, <u>Lender shall have no obligation to make any Loan Advance</u>.
>
> \*\*\*
>
> 7.2.6 <u>No Other Default</u>. <u>Neither Borrower nor Guarantor shall be in default under any obligation to Lender now existing or hereafter arising, direct or indirect, absolute or contingent, related to the Loan or the Project, or otherwise</u>. There shall not be any breach of warranty or representation made in any of the Loan Documents, nor shall there be any Default under any of the Loan Documents.

There is no evidence that Defendant specifically waived in writing either of those conditions, as expressly required by Section 7.2 of the Loan Agreement. *See also Quality Prods. & Concepts v. Nagel Precision, Inc.*, 469 Mich. 346, 362 (2003). As an Equity Deficiency existed as of March 14, 2008, Defendant had the right to refuse to make the March 14, 2008, Capital Improvement Advance pursuant to Section 7.2.2. In addition, because Alden was in default of its obligation to pay real estate taxes as of March 14, 2008, Defendant also had the right to refuse to make the Capital Improvement Advance pursuant to Section 7.2.6.

**C.  Conclusion**

For the reasons set forth above, the Court concludes: (1) Defendant was not obligated to

fund the March 14, 2008, Capital Improvement Advance; (2) Defendant did not breach the contract by refusing to make that Capital Improvement Advance; (3) Alden breached its obligations under the Loan Agreement; and (4) NGI breached its obligations under the Guaranty. Accordingly, the Court hereby:

- (A) GRANTS summary judgment on each of Plaintiffs' three claims (breach of contract, specific performance and declaratory relief), all of which are grounded in the theory that Defendant wrongfully refused to make the Capital Improvement Advance requested on March 14, 2008;

- (B) DISMISSES Plaintiffs' cause of action with prejudice; and

- (C) GRANTS summary judgment against Plaintiffs with respect to all of Defendant's counter-claims, including the claims of breach of contract, declaratory relief and an accounting against Alden and the claim against NGI for declaratory relief.

In furtherance of granting summary judgment in favor of Defendant on its counter-claims, the Court:

- (i) holds that Plaintiffs, jointly and severally, owe Defendant $14,065,788.88 in unpaid principal on the loan, as well as accrued interest, default interest and late charges on the loan, together with attorney fees and costs incurred in enforcing Defendant's rights under the Loan Agreement;

- (ii) ORDERS Defendant to submit to the Court within 20 days of the date of this Opinion and Order (a) an invoice of attorney fees and costs incurred with respect to enforcing its rights under the Loan Agreement, and (b) the accrued interest, default interest and late charges on the loan as of September 30, 2009;

- (iii) ORDERS Alden to provide the financial and other records required under the terms of the Loan Agreement to Defendant within 20 days of the date of this Opinion and Order; and

- (iv) ORDERS Alden to account for all funds it received from the Bank, for its use of all such funds and for all of its expenditures related to the Property and provide the same to Defendant within 20 days of the date of this Opinion and Order.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Motion for Summary Judgment filed

by Defendant is GRANTED.

    IT IS SO ORDERED.

                                            s/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated:  September 23, 2009

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 23, 2009.

                                            s/Marie E. Verlinde
                                            Case Manager
                                            (810) 984-3290